1  Jack Scott
   7628 E.Onyx Court
2  Scottsdale,Az.85258
   480-991-8664
3

4

```
FILED          LODGED
RECEIVED       COPY

    JUN 1 8 2009

CLERK U S DISTRICT COURT
  DISTRICT OF ARIZONA
BY_____  DEPUTY
```

5

6              In The United States District Court

7                 For The District Of Arizona

8
    Jack Scott                      )  Case Number
9                                   )
              Plaintiff in pro se.  )  CV 09-1313-PHX-6MS
10                                  )
        vs.                         )  Complaint For:
11                                  )
   GMAC MortgageLLC dba Homecomings Financial)  1.Declaratory Relief
12                                  )
   Mortgage Electronic Registration Systems  )  2.Injunctive Relief
13                                  )
   Executive Trustee Services LLC   )  3.Compensatory and punitive damages
14
   CFS Mortgage Corporation
15
   First National Bank of Arizona
16
   Does 1-10
17
              Defendants
18

19

20
                         Jurisdiction
21
    Whereas the property which is the subject of this complaint
22
   is located at 7628 E.Onyx Court,Scottsdale,Arizona 85258 in the
23
   county of Maricopa and is under notice of trustee sale to take
24
   place at 201 West Jefferson Street,Phoenix,Arizona also in the
25
   county of Maricopa and whereas the Defendants do business in the
26
   State of Arizona **it is asserted** that the court has
27
   jurisdiction in this matter.
28
                       First Cause of Action

                    [**Summary of pleading**] - 1

(Declaratory Relief)

1. Plaintiff is a resident of the county of Maricopa, State of Arizona. Plaintiff is the owner of real property located at 7628 E. Onyx Court, Scottsdale, Arizona ("the Property")

2. Defendant, Executive Trustee Services LLC, ("ETS") a California corporation is a trustee in the business of conducting non-judicial foreclosures of real property.

3. Defendant, Mortgage Electronic Registration Systems ("MERS"), a Delaware corporation is in the business of supplying nominee services.

4. Defendant, CFS Mortgage Corporation ("CFS"), an Arizona Corporation is in the business of mortgage banking and broking in Arizona.

5. Defendant GMAC Mortgage LLC dba Homecomings Financial ("HF") is located in Iowa and is in the business of lending and loan servicing.

6. Defendant, First National Bank of Arizona ("FNBA") now defunct is/was in the business of banking in Arizona.

7. Plaintiff is unaware of the true nature and capacities of the Defendants sued as Does 1 through 10 inclusive and therefore sues these Defendants as Does. Plaintiff is informed and believes that each of these Doe Defendants is responsible in some manner for the acts alleged in this Complaint and is responsible for the damages suffered by Plaintiff described in this Complaint The Plaintiff will advise the Court of the true names and capacities of these Doe Defendants as soon as their identities are ascertained.

8. On or about October 18th 2005. Plaintiff borrowed $495000.00

from Defendant CFS (acting as a "table lender for FNBA) to refinance an existing loan on The Property.As evidence of the loan transaction,Plaintiff signed and delivered to Defendant CFS a written promissory note.A copy of the promissory note (unsigned) is attached to this Complaint as Exhibit "A"and incorporated by this reference.

9.To secure payment of the promissory note,Plaintiff signed and delivered to Defendant CFS a deed of trust,dated October 18th 2005,in which Plaintiff(as trustor)conveyed to the Talon Group (as trustee),an interest in the property as security for payment of the promissory note.Defendant MERS is described in the deed as the beneficiary but"solely as a nominee for lender and lender's successors and assigns".

10.On or about October 21st2005,the deed of trust was recorded in Oficial Records of Maricopa County,Arizona.A copy of the deed of trust is attached to this Complaint as Exhibit "B" and incorporated by this reference.

11.Comencing about April 2008 and up and till the present time, Plaintiff has received numerous communications alleging default on the terms of the promissory note(per Exhibit "A"attached to this Complaint)These communications were initiated by Defendant HF located in Iowa, which acts as a loan servicing agent and to which company the Plaintiff makes monthly loan payments.

12.On July 31st 2008 Defendant ETS recorded a Notice of Trustee's Sale in the official records of Maricopa County announcing that ETS will conduct a trustee's sale of the Property on November 3rd 2008,at 12.00pm in front of the Superior Court Building,201 West Jefferson,Phoenix,Arizona.A copy of the Notice of Trustee Sale is attached to this Complaint as Exhibit "C" and incorporated by

1  this reference.

2  13.On July 31st 2008 Defendant MERS recorded a Notice of
3  Substitution of Trustee in the Official Records of Maricopa
4  County,substituting Defendant ETS in place of the Talon Group
5  as trustee of the Deed of Trust attached to this Complaint as
6  Exhibit "B".A copy of the Notice of Substitution of Trustee is
7  attached to this Complaint as Exhibit "D" and incorporated by
8  reference.

9  14.During the period from July 31st 2008 and up and till the
10 present time continuing negotiations have taken place between
11 Defendant HF and the Plaintiff regarding the alleged default.No
12 agreement to resolve the matter has been reached and a Trustee's
13 Sale of the property is now scheduled to take place on Wednesday
14 June 24th 2009 at 12.00pm at the same venue as described in
15 11.above.

16 Formal notice of the new date for the sale has not been given to
17 the Plaintiff and the information has been obtained from the
18 telephone information line available for this purpose.

19                         **NOW**

20   Plaintiff alleges and seeks remedies and relief as follows
21 15.Defendant CFS( as "table lender"for FNBA ),sold,assigned,or
22 otherwise transferred the loan,immediately after closing to an
23 undisclosed third party lender which was not properly registered
24 or regulated as a financial institution or lender at the time
25 the transaction took place.CFS and/or FNBA was paid a sum equal
26 to the "face value"($495000.00)of the loan **and**,was paid in
27 addition, a fee undisclosed to the borrower- of approximately
28 2.5% of the loan amount.Neither CFS nor FNBA is  the current
owner or holder of the Promissory note attached to this

Complaint as "Exhibit"A and neither of these Defendants has any pecuniary interest legal, equitable, or otherwise in the deed of trust attached to this Complaint as "Exhibit"B.

16. Plaintiff alleges that neither Defendant CFS nor Defendant FNBA did timely deliver either the promissory note or a formal assignation of the deed of trust to the new owner or holder. Consequently neither of these two Defendants completed a"true sale"of the security to the new owner or holder which, therefore, at the time of the Plaintiff's alleged default did not have a valid legally enforceable interest in either the Promissory note or in the deed of trust. *See Paper Apart for relevant caselaw.*

17. Further to 15.and 16.foregoing, Plaintiff alleges that notwithstanding that a "true sale " did not take place  the current beneficial owner or holder of the note is a different party than that which is the current true beneficiary of the deed of trust. A mortgage loan consists of a promissory note and a security instrument,typically a mortgage or a deed of trust.When the note is split from the deed of trust "the note becomes as a practical matter,unsecured."RESTATEMENT(Third)of PROPERTY (MORTGAGES)@ 5.4 cmt.e(1997).A person holding only a note lacks the power to foreclose because it lacks the security and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it.*See* RESTATEMENT (Third)of PROPERTY (MORTGAGES)@ 5.4 cmt e (1997)."Where the mortgagee has transferred only the mortgage,the transaction is a nullity and his assignee having received no interest in the underlying debt or obligation has a worthless piece of paper."4 RICHARD R.POWELL,POWELL on REAL

PROPERTY@ 37.27[2]  (2000).

Plaintiff alleges that consequently the deed of trust should be cancelled, marked as such, and returned to the Plaintiff, and that the owner or holder of the promissory note be regarded as holding at best an unsecured obligation.

18. Plaintiff has written to HF (the loan servicer to which Plaintiff makes monthly loan payments) and requested HF to provide the identity of the current "true lender/owner or holder of the promissory note/"true" beneficiary of the deed of trust. HF has failed to respond to that letter- attached to this Complaint as "Exhibit" D and incorporated by reference.

19. Plaintiff alleges that only the current owner or holder of the promissory note is entitled to accelerate repayment of the note and/or to implement the power of sale provisions in the deed of trust which will result in a Trustee's Sale of the property securing the note. In the absence of the identity of that party, Plaintiff, hereinafter in this Complaint, refers to that party as Defendant "Doe" 10.

For Defendant "Doe"10 to exercise the rights and priviledges contained in the promissory note, and those conferred by the deed of trust the Defendant "Doe"10 must prove:

a. The existence of the note in question.

b. That the borrower signed the note.

c. That the Defendant is the owner or holder of the note.

d That a certain sum and balance is owing on the note.

Also-for the owner or holder of the promissory note to enforce both the rights and privileges contained in the note and the rights and privileges contained in the deed of trust, the owner or holder must be the owner or holder **at the time** those rights

1  and privileges are enforced.

2  Furthermore where the promissory note and the interest in the

3  deed of trust have been obtained by the Defendant as a

4  consequence of a transfer or succession of transfers from

5  previous owners or holders,the Defendant should be required to

6  show that the said transfer(s)of the note and of the interest in

7  the deed of trust are validly constituted and confer on the

8  Defendant good and enforceable title to the note and to the

9  interest in the deed of trust.*See Paper Apart for relevant*

10  *caselaw*

11  20.Plaintiff alleges that neither Defendant HF  nor any of the

12  other Defendants included in this Complaint is the owner or

13  holder of the promissory note attached to this Complaint as

14  "Exhibit"A.*See Paper Apart for relevant caselaw.*

15  21.Consequent to 20.above,Plaintiff alleges that as none of the

16  Defendants included in this Complaint is the owner or holder of

17  the promissory note,then none of the Defendants is a beneficiary

18  of the deed of trust-attached to this Complaint as "Exhibit"B-

19  nor do any of the Defendants have any rights or privileges in

20  the said deed of trust.

21  Whilst the deed of trust does describe Defendant MERS as the

22  beneficiary of the deed of trust,MERS acts "solely as a nominee

23  for Lender and Lender's assigns".Accordingly MERS is beneficiary

24  "in name only",and is not and never has been the "true"

25  beneficiary of the deed of trust.*See Paper Apart for relevant*

26  *caselaw.*

27  Additionally, Defendant MERS, by it's own admission in cases

28  throughout the country, does not own or hold promissory notes.

MERS consequently lacks the "standing" required to enforce the

1  terms of promissory notes.

2  22.Furthermore Plaintiff alleges that whilst MERS was appointed
3  as a nominee by Defendant CFS,MERS may only remain as a nominee
4  through successive changes of ownership of the promissory note
5  and deed of trust  with the consent of each successive
6  owner.Defendant CFS is not entitled to bind successive
7  owners,nor is MERS entitled to confer upon itself a permanent
8  nomineeship.Unless Defendant MERS can exhibit written consent by
9  each of the successive owners,for MERS continuing to act as a
10 nominee for the "true"beneficiary of the deed of trust,then MERS
11 does not have any capacity or authority to act or implement the
12 terms of the deed of trust.*See Paper Apart for relevant caselaw.*
13 23.Plaintiff alleges that Defendants HF and MERS have failed to
14 give proper Notice of Default, Right to Cure, and acceleration
15 of the Promissory Note-attached to this complaint as "Exhibit"A
16 as required by 12USC 2601 et seq.and 15USC 1601 et seq.
17 Furthermore as alleged by Plaintiff in 20.above,as none of the
18 Defendants is the owner or holder of the promissory note,then
19 none of the Defendants is entitled to issue such notice(s).
20 24.Plaintiff alleges that the Defendants HF,MERS,ETS,CFS and
21 Does 1 through 10 do not, whether individually or collectively,
22 have the "standing" necessary to initiate or instruct a Trustee
23 Sale of "The Property".None of these Defendants hold the
24 promissory note,or are the lender or beneficiary secured by the
25 deed of trust. Furthermore, Defendant ETS derives the right to
26 conduct said Trustee Sale by authority vested in it by Defendant
27 MERS,which- as alleged-does not have the standing necessary to
28 initiate or instruct said Trustee Sale.Accordingly
   Defendant ETS does not have a right to conduct such a sale.*See*

1 *Paper Apart for relevant caselaw.*

2 25.Official Records of Maricopa County do not record any formal

3 written assignation(s)of the deed of trust attached to this

4 Complaint as "Exhibit"B.Accordingly as  previously stated the

5 current lender/owner or holder of the promissory note secured by

6 said deed of trust is unknown to the Plaintiff.

7 As recordings of transfers of the promissory note attached to

8 this Complaint as "Exhibit"A are not required,the current owner

9 or holder of said note is unknown to the Plaintiff.

10 Plaintiff alleges that Defendants included  in this Complaint

11 are attempting to perpetrate a fraud on both the Plaintiff, and

12 on the "real party in interest" which is the current owner or

13 holder of the promissory note,and which is secured by the deed

14 of trust.

15 This fraud is designed to unlawfully acquire the Plaintiff's

16 "Property"and to thus conceal from the said real party in

17 interest that it's legal rights to enforce the terms of the

18 promissory note and the deed of trust have been compromised or

19 rendered unenforceable by the wilful negligence,and practices of

20 one or more of the Defendants included in this Complaint.

21 Said wilful negligence includes,amongst other things,failure to

22 timely deliver the promissory note to successive holders and to

23 timely prepare,deliver and record the formal assignation or

24 successive assignations of the deed of trust to successive

25 lenders- all of which are necessary to maintain and protect

26 their legal rights.

27 26.Plaintiff asserts that a real and fundamental controversy

28 exists between the Plaintiff and the Defendants as to their

respective rights and obligations with respect to the pending

1 Trustee Sale.

2    Plaintiff desires a judicial determination and declaration of
3 Plaintiff's and Defendants respective rights and obligations and
4 specifically that:

5 A.Per items 15.through 17.of this Complaint, that the deed of
6 trust,attached to this Complaint as "Exhibit"B be deemed
7 cancelled and returned (marked accordingly)to the Plaintiff.

8 B.Per item 18.of this Complaint, that Defendant HF be required
9 to disclose and provide the identity of the "true" current owner
10 and holder of the Promissory note and the identity- if different
11 of the "true"beneficiary of the deed of trust.

12 C.Per item 19.of this Complaint that Defendant HF be required :

13 1.To produce the original Promissory note signed by the
14 Plaintiff together with all evidence of the transfer, or
15 successive  transfers which brought it to be owned or held by
16 Defendant HF.

17 2.To produce the original deed of trust,signed by the Plaintiff
18 together with all formal assignations in favour of the current
19 "true" beneficiary,whether that be any of the Defendants named
20 in this Complaint or some other party.

21 3. To produce, in the event that Defendant HF is neither the
22 owner or holder of the Promissory note,nor the "true"beneficiary
23 of the deed of trust,written authority enabling it to act as an
24 agent on behalf of the said owner or holder or"true"beneficiary
25 and furthermore to produce the Promissory note and the deed of
26 trust- together with all the evidence (as requested in C.1 and 2
27 above-to show that said owner or holder or "true" beneficiary is
28 the "real party in interest" and is entitled to instruct HF in
this matter.

D.Per items 20.through 22 of this Complaint that Defendant MERS
lacks the necessary "standing" to authorize, initiate, or
implement the powers of sale contained in the deed of trust as
it is not:
.The owner or holder of the Promissory note or
.The "true"beneficiary of the deed of trust.
. Nor does it have the consents necessary to be the current
nominee for the "true" beneficiary of the deed of trust.
E.Per items 23 and 24.of his Complaint that the Defendants HF
and MERS failed to provide proper Notice of Default,Right to
Cure,and acceleration of the Promissory note rendering the
pending Trustee Sale unlawful,and furthermore that the
Defendants HF and MERS are not entitled to issue such
notice(s),as they lack the necessary"standing" to so act.
Furthermore, that Defendant ETS is not entitled to conduct a
Trustee Sale of the property as it does not have any rights to
so do unless authorized and instructed by said Defendants which
as stated lack the necessary "standing" to so act.
F.Per 25.of this Complaint,that the Defendants HF,MERS, CFS and
Does 1 through 10 have individually or collectively conspired to
defraud the Plaintiff of his Property and to conceal from the
current owner of the Promissory note and the "true beneficiary
of the deed of trust, their wilful misrepresentation of the true
nature of these investments and their wilful negligence in
failing to deliver legal enforceable rights to said owner and
beneficiary.
G. Per 25.of this Complaint - further - that the Defendants
HF,MERS,CFS,and Does 1 through 10 be held liable and accountable
for their wilful negligence and fraudulent acts.

## Second Cause of Action

### (Injunctive Relief)

27. Plaintiff realleges and incorporates by reference the allegations contained in items 15 through 25 of the First Cause of Action of this Complaint, together with the request for judicial determination of rights as set out in item 26. A. through G of this Complaint.

28. Defendant ETS intends to sell and unless restrained will sell "The Property" on June 24th 2009 at 12.00pm at the Superior Court Building, 201 West Jefferson Street, Phoenix, Arizona. causing great and irreparable injury to the Plaintiff in that if the Trustee's Sale takes place as scheduled, Plaintiff, having no right to redeem "The Property" after the sale will forfeit it.

29. The Trustee's Sale is wrongful and should be enjoined. Plaintiff does not have any other plain, speedy, or adequate remedy, and the injunctive relief requested herewith is necessary and appropriate at this time to prevent irreparable injury and loss of Plaintiff's "Property".

## Third Cause of Action

### Compensatory and Punitive Damages

30. Plaintiff and his family have suffered extreme emotional distress due to the negligent, willful, and fraudulent conduct of the "Defendants.

31. Plaintiff requests that the court award damages in the amount of $5,000,000 US as compensation for said extreme emotional distress.

32. Plaintiff requests that the court award damages in the amount

of $20,000,000 US as punitive damages.

<u>Therefore Plaintiff respectfully requests judgment as follows</u>

1.That the court issue a declaration of the rights and duties of the parties as set out in paragraph 26 A through G of this Complaint-all in favour of the Plaintiff.

2.That the court issue a temporary restraining order,preliminary injunction,and permanent injunction restraining the Defendants, their agents,attorneys and representatives and all persons acting in concert or participation with them,from selling, attempting to sell,or causing to be sold "The Property"either under the power of sale clause contained in the deed of trust or by a judicial foreclosure action.

3.That the court award to the Plaintiff compensatory damages in the amount of $5,000,000 US and punitive damages in the amount of $20,000,000 US.

4.That the Plaintiff recover attorney fees and costs incurred in this action

5.That the Plaintiff recover the costs of suit incurred by the Plaintiff.

6.Such other and further relief as the court may deem just and proper.

Dated: JUNE 18TH 2009

_____
Jack Scott

Plaintiff in pro se.

[**Summary of pleading**] - 13

1  Jack Scott                           **Paper Apart**
   7628 E.Onyx Court
2  Scottsdale,Az.85258
   480-991-8664
3

4

5                    In the United States District Court
                        For The District Of Arizona
6

7
   Jack Scott                          ) Case No.: [**Case number**]
8                                       )
                  Plaintiff in pro se   )
9                                       )
       vs.                             )     Complaint For:
10                                      )
   GMAC MortgageLLC dba Homecomings Financial) 1.Declaratory Relief
11                                      )
   Mortgage Electronic Registration Systems  ) 2.Injunctive Relief
12                                      )
   Executive Trustee Services LLC            3.Compensatory and punitive damages
13
   CFS Mortgage Corporation
14
   Does 1-10
15
                  Defendants
16
   _____
17

18     This is the "Paper Apart"referred to in the above referenced Complaint

19          **Items 16,19,20 and 24 (of the above referenced Complaint)**

20  **In re Foreclosure Cases,2007 WL 3232430(ND.Ohio,Oct.31 2007)**,14 foreclosure

21  actions were dismissed based on the plaintiff-lender's inability to establish

22  "standing"for the actions at the time the actions were filed.

23  **IN re Fireclosure Cases,2007 WL 4034554(N.D.Ohio,Nov 14 2007)**,32 foreclosure

24  actions were dismissed for very similar reasons.

25  Whilst the current complaint relates to a non judicial foreclosure the

26  Plaintiff contends that the Defendants have a similar obligation to show that

27  they have the "standing"to invoke the power of sale in the deed of trust and

28  that they had that "standing at the time they invoked that power.

    Plaintiff contends further that the rights and priviledges of power of sale

1  in the deed of trust places upon the Defendants (and others in a similar
2  position)an even greater responsibility to ensure they have  proper legal
3  standing to invoke a power which will **without court action** dispossess the
4  Plaintiff of his Property.This is particularly so where none of the
5  Defendants is identified on the promissory note as the owner or holder.

6  **Items 21 and 22 (of the above referenced Complaint)**
7  **In re Mitchell- United States Bankruptcy Court-District of Nevada**
8  **Case-BK-S-07-16226-LBR-Chapter7** -held :"The lift-stay motions in Dart and
9  Hawkins are denied.MERS may not enforce the notes as the alleged beneficiary.
10 While MERS may have standing to prosecute the motion in the name of it's
11 member as a nominee,there is no evidence that the named nominee is entitled
12 to enforce the note or that MERS is the agent of the note's holder.Indeed the
13 evidence is to the contrary,the note has been sold,and the named nominee no
14 longer has any interest in the note."

15 **All items 15 through 25 (of the above referenced Complaint)**
16 Plaintiff reserves the right to introduce further relevant caselaw and
17 commentary in support of the Complaint.

18
19
20
21
22
23
24
25
26
27
28

EXHIBIT A (5 x PAGES)

MIN: 1002074-0100021007-9     **InterestFirst℠ NOTE**     Loan Number: 3315006391

OCTOBER 18, 2005 .                    PHOENIX                         ,              ARIZONA
   [Date]                               [City]                                      [State]

7628 EAST ONYX COURT, SCOTTSDALE, ARIZONA 85258
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $495,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CFS MORTGAGE CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first 120 months, and then will consist of principal and interest.

I will make my monthly payment on the 1st day of each month beginning on DECEMBER 1 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on NOVEMBER 1       , 2035    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 7720 N. 16TH STREET, #325, PHOENIX, ARIZONA 85020

or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $2,990.63      for the first 120 months of this Note, and thereafter will be in the amount of U.S. $3,912.36   . The Note Holder will notify me prior to the date of change in monthly payment.

## 4.  BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

MULTISTATE InterestFirst FIXED RATE NOTE--Single Family
Fannie Mae UNIFORM INSTRUMENT
Form 3271 1/01
                              Page 1 of 3

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

Us3271l.not

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000  % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, 'a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may

Us32712.not

be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)          _____ (Seal)
JACK  SCOTT                 -Borrower                                -Borrower



_____ (Seal)          _____ (Seal)
                            -Borrower                                -Borrower



_____ (Seal)          _____ (Seal)
                            -Borrower                                -Borrower

[Sign Original Only]

MULTISTATE InterestFirst FIXED RATE NOTE--Single Family
Fannie Mae UNIFORM INSTRUMENT
Form 3271 1/01                              Page 3 of 3

DocMagic eForms  800-649-1362
www.docmagic.com

Us32713.not

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 3315006391

Date: OCTOBER 18, 2005

Borrower(s): JACK SCOTT

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this   18th   day of OCTOBER,   2005   , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of CFS MORTGAGE CORPORATION, AN ARIZONA CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 4   of the Note is amended to read in its entirety as follows:

## 4 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within TWENTY-FOUR ( 24  ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to    SIX    ( 6   ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

Uspatn.ppf.1.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.


_____   _____
Borrower JACK SCOTT                Date    Borrower                          Date


_____   _____
Borrower                          Date    Borrower                          Date


_____   _____
Borrower                          Date    Borrower                          Date

Uspatn.ppf.2.tan

EXHIBIT B (17 x PAGES)

## The Talon Group

Recording Requested By:
CFS MORTGAGE CORPORATION

And After Recording Return To:
FIRST NATIONAL BANK OF ARIZONA
14635 KIERLAND BLVD. #201
SCOTTSDALE, ARIZONA 85254
Loan Number: 3315006391

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

**MIN:** 1002074-0100021007-9

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated OCTOBER 18, 2005 , together with all Riders to this document.

**(B)** "**Borrower**" is JACK SCOTT, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument. Borrower's mailing address is 7628 EAST ONYX COURT, SCOTTSDALE, ARIZONA 85258

**(C)** "**Lender**" is CFS MORTGAGE CORPORATION

Lender is a ARIZONA CORPORATION organized and existing under the laws of ARIZONA
Lender's mailing address is 7720 N. 16TH STREET, #325, PHOENIX, ARIZONA 85020

**(D)** "**Trustee**" is THE TALON GROUP
Trustee's mailing address is 10611 N. HAYDEN RD, BLDG D, #106, SCOTTSDALE, ARIZONA 85260

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "**Note**" means the promissory note signed by Borrower and dated OCTOBER 18, 2005
The Note states that Borrower owes Lender FOUR HUNDRED NINETY-FIVE THOUSAND AND 00/100 Dollars (U.S. $495,000.00 ) plus interest.

DocMagic eForms 800-649-1362
www.docmagic.com

A23003.mzd.1.tem

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | PREPAYMENT RIDER TO SECURITY INST |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of MARICOPA :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)
Page 2 of 14

DocMagic *eFarms* 800-649-1362
www.docmagic.com

z3003.mzd.2.tem

LOT 38 OF JASON MANOR, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 202 OF MAPS, PAGE 23.
A.P.N. #: 175-47-094 1

which currently has the address of  7628  EAST ONYX COURT
                                                        [Street]

SCOTTSDALE                          , Arizona     85258     ("Property Address"):
      [City]                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of

time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds,

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)
Page 4 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

a3003.mzd.4.tem

Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires,

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)
Page 5 of 14

DocMagic eFLorms 800-649-1362
www.docmagic.com

003.mzd.5.tem

Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

A3003.mzd.6.tem

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)
Page 7 of 14

DocMagic *EForms* 800-649-1362
www.docmagic.com

s3003.mzd.7.tem

the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)
Page 8 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

3003.mzd.8.tem

rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.

If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of:  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter

the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all

expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JACK  SCOTT                     -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Witness:

Witness:

_____

_____

DocMagic eForms 800-649-1362
www.docmagic.com

Az3003.mzd.13.tem

State of Arizona
County of  MARICOPA

    The foregoing instrument was acknowledged before me this
by   JACK SCOTT

 

_____

Signature of Person Taking Acknowledgment


_____

Title


_____

Serial Number, if any


        (Seal)                  My commission expires:

# PREPAYMENT RIDER

Loan Number: 3315006391

Date: OCTOBER 18, 2005

Borrower(s): JACK SCOTT

THIS PREPAYMENT RIDER (the "Rider") is made this 18 th   day of OCTOBER   , 2005   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of CFS MORTGAGE CORPORATION, AN ARIZONA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

7628 EAST ONYX COURT, SCOTTSDALE, ARIZONA 85258

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   PREPAYMENT CHARGE

The Note provides for the payment of a prepayment charge as follows:

### 4 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Usjr.ppf.1.tem

which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)        _____ (Seal)
JACK SCOTT        -Borrower                      -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                          -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                          -Borrower

DocMagic *eForms* 800-649-1362
www.docmagic.com

Loan Number: 3315006391

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 18th day of OCTOBER, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to CFS MORTGAGE CORPORATION, AN ARIZONA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

7628 EAST ONYX COURT, SCOTTSDALE, ARIZONA 85258
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

JASON MANOR

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                         Page 1 of 3

DocMagic *EFarms* 800-649-1362
www.docmagic.com

Us3150.rid.1.tem

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                          Page 2 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3150.rid.2.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
JACK  SCOTT                    -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Us3150.rid.3.tem

**SECURITY TITLE AGENCY**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20080669381   07/31/2008   03:51
ELECTRONIC RECORDING

140869243-2-2-2--
brownj

When Recorded Return to:
**Executive Trustee Services, LLC**
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

(818) 260-1600

7440560688  AZ-149874-C   14-69243

# NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust dated 10/18/2005 and recorded on 10/24/2005 as Instrument # **20051596089**, Book Page    in the office of the County Recorder of **Maricopa** County, Arizona, at public auction to the highest bidder at At the steps at the front entrance of the Superior Court Building, 201 West Jefferson, Phoenix, Arizona, on 11/3/2008 at **12:00 PM** of said day:

**Lot 38, of JASON MANOR, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 202 of Maps, page 23.**

ACCORDING TO THE DEED OF TRUST OR UPON INFORMATION SUPPLIED BY THE BENEFICIARY, THE FOLLOWING INFORMATION IS PROVIDED PURSUANT TO A.R.S. SECTION 33-808(C):

STREET ADDRESS OR IDENTIFIABLE LOCATION:   **7628 EAST ONYX COURT
SCOTTSDALE, AZ 85258**

TAX PARCEL NUMBER: **175-47-094**

ORIGINAL PRINCIPAL BALANCE:  **$495,000.00**

NAME AND ADDRESS OF ORIGINAL TRUSTOR:
(as shown on the Deed of Trust)

**Jack Scott, a married man as his sole and separate property
7628 East Onyx Court
Scottsdale, AZ 85258**

NAME AND ADDRESS OF BENEFICIARY:
(as of recording of Notice of Sale)

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
1100 VIRGINIA DRIVE
FORT WASHINGTON, PA 19034



20080669381

(Page 2 of 2)

AZ-149874-C   7440560688        14-69243

NAME, ADDRESS & TELEPHONE NUMBER OF TRUSTEE:
(as of recording of Notice of Sale)

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
Sale Line: 714-730-2727

DATED: 7/30/2008

EXECUTIVE TRUSTEE SERVICES, LLC

By: _____
Joyce A. Petty, Limited Signing Officer

"Executive Trustee Services, LLC is a licensed escrow agent and therefore qualified
to act as a Trustee pursuant ARS Section 33-803(A)(1). Trustee's Regulator:
Arizona State Banking Department."

State of California} ss.
County of Los Angeles }

On 7/30/2008 before me, **Elizabeth Ogbomon** Notary Public, personally appeared **Joyce A. Petty,** who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature_____        (Seal)
        Elizabeth Ogbomon



ELIZABETH OGBOMON
Commission # 1558797
Notary Public - California
Los Angeles County
My Comm. Expires Mar 13, 2009

**Executive Trustee Services, LLC**
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

**Date:** 8/6/2008

T.S. Number:   AZ-149874-C
Loan Number:  7440560688

# DEBT VALIDATION NOTICE

1.  The enclosed document relates to a debt owed to the current creditor:

    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

    You may send us a written request for the name and address of the original creditor, if different from the current creditor, and we will obtain and mail the information to you.

2.  As of 8/6/2008 the total delinquency owed was $13,416.42, but this amount will increase until the delinquency has been fully cured.

3.  As of 8/6/2008, the amount required to pay the entire debt in full was $509,588.05, but this amount will increase daily until the debt has been fully paid.

4.  You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after receiving this notice. Otherwise, we will assume that the debt is valid.

5.  If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of any judgement against you.

> **WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE**



**SECURITY TITLE AGENCY**

**RECORDING REQUESTED BY:**

**AND WHEN RECORDED MAIL TO :**
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600
19-69243

TS No.: **AZ-149874-C**
Loan No.: **7440560688**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20080669380  07/31/2008  03:51
ELECTRONIC RECORDING

140869243-1-2-1--
brownj

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

**WHEREAS**, Jack Scott, a married man as his sole and separate property was the original Trustor, **The Talon Group** was the original Trustee, and **Mortgage Electronic Registration Systems, Inc.** was the original Beneficiary under that certain Deed of Trust dated **10/18/2005** and recorded on **10/24/2005** as Instrument **20051596089**, in Book , Page , of Official Records of **Maricopa** County, Arizona; and described as follows:

**Lot 38, of JASON MANOR, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 202 of Maps, page 23.**

**WHEREAS**, the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS**, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust Provided,

**NOW THEREFORE**, the undersigned hereby substitutes **EXECUTIVE TRUSTEE SERVICES, LLC**, as Trustee under said Deed of Trust. The successor trustee appointed herein qualifies as trustee of the Trust Deed in the trustee's capacity as a licensed escrow agent as required by ARS Section 33-803, Subsection (A) (1).

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
DATED: 7/30/2008

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Marvell L. Carmouche, **ASSISTANT SECRETARY**

State of California} ss.
County of Los Angeles }

On 7/30/2008 before me, **Elizabeth Ogbomon** Notary Public, personally appeared **Marvell L. Carmouche** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Elizabeth Ogbomon

ELIZABETH OGBOMON
Commission # 1558797
Notary Public - California
Los Angeles County
My Comm. Expires Mar 13, 2009

